## Halfpenny *versus* The Peoples' Fire Insurance Co.

Judgment entered on an assessment note, under the provisions of the charter of the Peoples' Fire Insurance Company, is not a general judgment which may be enforced against any property of the insured, but is restricted as a lien to the property insured.

June 19th 1877.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Appeal from the decree of the Court of Common Pleas of *Union county* : Of May Term 1877, No. 113.    In Equity.

Bill in equity filed by Mark Halfpenny to restrain the Peoples' Fire Insurance Company from the enforcement of a judgment entered in pursuance of the terms of a premium-note given by the complainant to effect an insurance in the defendant company on his frame woollen mill.

The facts are stated in the opinion of this court, together with those which here follow.

The lien was entered and filed December 24th 1873, by virtue of the following provision in the company's charter :

" Sect. 6.  And said company shall have a lien in the nature of a judgment, waiving the right of inquisition upon all of the said property of the insured, to the amount of his deposit note, or so much thereof as may be unpaid, which shall continue till the amount of such note, with interest and costs of execution, if any shall have been paid, or satisfied according to the provisions of this act : *Provided*, said company shall file in the office of the prothonotary of the county wherein such real estate shall be, a memorandum of the name of the individual insured, a description of the property, the amount of the deposit note unpaid, and the term for which the insurance shall continue ; and the prothonotary with whom the same shall be filed is hereby required to enter the same, * * * and the same when so entered, shall be deemed and taken to be, in all respects, as a judgment upon confession, by virtue of a warrant of attorney, and execution may at any time be had thereof for so much as, by virtue of the provisions of this act may be due and demandable ; but the lien thereof shall commence with the filing of such memorandum in the office of the prothonotary ; *Provided, further*, that such lien shall not be construed to take from such person insured, as aforesaid, the privileges of a freeholder.    Act April 13th 1838, Pamph. L. 364–5."

In the eleventh paragraph of his bill the complainant alleged that "No lien can be created, by virtue of sect. 6, aforesaid, except against property attached to and part of the freehold, that is to say, real estate.    The property insured by this policy was personal property—the lien is on the property insured, which by the terms of the said section must be real estate ; and even if the machinery and gearing were part of the real estate, it being machinery and

[*Halfpenny v. Peoples' Fire Insurance Co.*]

gearing alone that were insured, there could be no lien entered and execution had against them alone, or against the real estate or buildings in which they were placed."

To this the defendant answered, "That if a lien could not be had against anything but real estate, yet there is nothing to prevent the defendants filing their lien and issuing an execution and levying upon the personal property of the defendant. The act providing for the filing of liens and the collection of assessments, does not provide a different and less speedy mode of collecting assessments from insurers of personal property, than from those insuring real estate. The mere fact that defendant has no realty, is no reason why a plaintiff cannot enter his judgment, and issue execution and make his money out of defendant's personalty. Besides the limitation of the lien to the property insured by policy of insurance, would not prevent the collection of assessments from other property of the insured."

The master, to whom the case was referred, reported that in his opinion " neither the destruction of the mill nor the alienation of the ground on which it stood discharged the plaintiff's liability for his proportionable share of the losses occurring during the continuance of the policy, to wit, from July 9th 1864 to July 9th 1869 : Foyce v. Leighton, 4 Foster (N. H.) 42; Bangs v. Scidmore, 24 Barb. (N. Y.) 29 ; Flanders on Ins. 24. But, while the plaintiff continues liable on his premium-note, and while the memorandum which constitutes a lien may be filed, even after the destruction of the buildings and the alienation of the ground, the property being real estate, and thereby determining the county in which lien is to be entered, yet the property having been alienated before the filing of the memorandum, and, by the express provisions of the act authorizing the lien, the lien only commencing with the filing of the memorandum, when so entered (while it could not be a lien on that property, or any other), was to be deemed and taken to be in all respects, as a judgment entered upon confession by virtue of a warrant of attorney, and execution might at any time be had thereof, for so much as, by virtue of the provisions of the Act of 1838, may be due and demandable."

The exceptions filed to this report were dismissed and the report confirmed.

From this decree this appeal was taken by the complainant, who alleged as error, *inter alia*, this construction of the section of the Act of Assembly giving the lien the force and effect of a judgment by confession.

*Linn & Dill*, for appellant.—The lien is given " upon all of the said property of the insured," and it must be filed in the office of the prothonotary of the county where such real estate shall be. Whatever the liability of the defendant on his premium-note, the

4 NORRIS—4

lien by their charters is to be upon the property itself and in the county where situated. The act could not contemplate the entry of lien after alienation.

*G. F. Miller & Sons*, for appellee.

Mr. Justice GORDON delivered the opinion of the court, October 8th 1877.

Mark Halfpenny, the plaintiff in this bill, procured an insurance from the Peoples' Insurance Co., for a term of five years, commencing July 9th 1864, on his three-story frame woollen mill, situated in Hartley township, Union county. This insurance was on the mutual plan, and involved a premium-note of six hundred dollars. An assessment was made on this note, January 18th 1873, of twenty per centum, for the payment of losses happening during the life of the policy; and this not being paid, judgment was entered therefor, under the provisions of the Acts of Assembly of 1838 and 1843 (both of these acts being parts of the company's charter), in the Common Pleas of Union county, December 24th 1873. Execution was issued on this judgment to February Term 1874. It is this execution which the plaintiff seeks to enjoin. The property was burned on the 11th day of June 1866; the loss adjusted and the policy cancelled in July following. Subsequently, on or about the 1st of April 1868, the real estate upon which the insured property had been situated, was sold by Halfpenny, and the possession delivered to Matthew Norton.

It is not pretended that this judgment bound this property in the hands of Norton, for it was entirely too late for that. It is urged, however, that inasmuch as the sixth section of the Act of April 13th 1838 provides that "the same, when so entered, shall be deemed and taken to be, in all respects, as a judgment upon confession by virtue of a warrant of attorney," a general judgment is thus created against the insured, upon which execution may issue against any property he may chance to own, whether real or personal. Were we to consider only this excerpt from the statute, we must necessarily adopt the conclusion above stated; but an investigation of the whole act leads us to a different opinion. In terms the lien is special—confined to the property insured. It is " in the nature of a judgment, waiving the right of inquisition, *upon all property so insured.*" The memorandum must be filed in the office of the prothonotary of the county " *where such real estate shall be;*" and it must be accompanied with a description of the insured property. If the intention was to create a general judgment against the insured, why this careful limitation to the property itself? If it was to bind all property, why file a special description of that insured, or why confine it to the county in which the premises are situated, or why this waiver of the right of inquisition, if the judgment might be satisfied by a levy on personal property? These

[Halfpenny *v.* Peoples' Fire Insurance Co.]

questions are unanswerable on the hypothesis of a general judgment. If, however, the lien is limited and specific, the execution can have no wider scope than the judgment itself—the fountain can rise no higher than its source. We may observe further, that as these statutes in no way abridge the powers of the company to collect its assessments by ordinary process, there is the less reason to extend those powers by implication or construction. It follows, from the above discussion, that the judgment against Halfpenny was inoperative and void, because, when entered, there was nothing upon which it could attach.

> And now, October 8th 1877, it is ordered that the decree of the Court of Common Pleas, dismissing the plaintiff's bill as to judgment No. 61, December Term 1873, The People's Fire Insurance Company of Pennsylvania *v.* Mark Halfpenny, be reversed and set aside, at the costs of the appellee, and further, that the said company be perpetually enjoined and restrained from the collection or enforcement of said judgment.